## McMahan v. Terkhorn et al.

[No. 9,298. Filed May 29, 1917. Rehearing denied October 23, 1917. Transfer denied April 25, 1918.]

1. Appeal.—*Review.*—*Harmless Error.*—*Overruling Motion to Make Complaint More Specific.*—Error, if any, in overruling a motion to make the complaint more definite and certain was harmless, where the facts alleged were sufficiently specific to inform defendant of its theory and claim, and the pleading showed that the facts desired were as fully known to him as to plaintiffs, and it appears from the record that defendant was permitted to testify fully concerning the matter which he asked to have more definitely averred. p. 504.

2. Vendor and Purchaser.—*Sales of Real Estate.*—*Excess Acreage.*—*Recovery For.*—There can be no recovery for excess acreage where land is sold in gross for a lump sum, except upon the ground of fraud or inequitable conduct. p. 507.

3. Vendor and Purchaser.—*Sales of Real Estate.*—*Excess Acreage.*—*Recovery For.*—*Mutual Mistake.*—A court of equity will allow compensation for excess acreage conveyed when there has been a mutual mistake in the conveyance and the transaction has been free from fraud where the parties have dealt in the belief that the tract of land conveyed contained a stipulated number of acres. p. 508.

4. Vendor and Purchaser.—*Sales of Real Estate.*—*Excess Acreage.*—*Recovery For.*—Although a sale of land was technically in gross, where the price was fixed on the basis of an incorrect estimate of the acreage made by a surveyor, which all the parties thought was correct and the price was reduced from that previously agreed upon when the parties correctly believed that the acreage was much greater than shown by the surveyor's estimate, equity will grant the vendor relief measured by the excess acres and the value thereof as expressed in the contract of sale on the basis of a sale by the acre, rescission being impossible because of the conveyance of part of the land by the purchaser. p. 509.

From Jackson Circuit Court; *Simpson B. Lowe,* Special Judge.

Action by Frank Terkhorn and others against Ziba McMahan. From a judgment for plaintiffs, the defendant appeals. *Affirmed.*

*Branaman & Branaman* and *Thomas H. Branaman,* for appellant.

*Montgomery & Montgomery,* for appellees.

IBACH, P. J.—This is an equity case brought by appellees to recover the value of an alleged excess of acreage contained in a tract of land sold by them to appellant.

In their first paragraph of complaint they seek a reformation of the contract of sale and a judgment for $3,000, the alleged value of the excess acreage. By the second paragraph they seek to correct a mutual mistake of all the parties to the contract respecting the number of acres involved in the sale, and to recover the value of such excess acreage.

There was a motion to make the second paragraph of the complaint more definite and certain, and the sufficiency of each paragraph thereof was also assailed for want of facts. It is quite apparent from the facts found that appellees recovered on their second paragraph, therefore the question of the sufficiency of the first paragraph is not of importance.

The second paragraph avers the title to the land involved to be in appellees, giving a description thereof by metes and bounds, and that the parties entered into a written agreement whereby appellees agreed that on March 5, 1913, they would convey the lands to appellant for $15,000, subject to taxes. The remaining averments are in substance that the agreement was made and entered into as aforesaid upon the belief and with the understanding by all the parties thereto that said tract of land contained approximately and substantially 133 acres, and that the consideration therefor calculated by the acre would be approximately $112, and said real estate was on said

day and still is worth that sum per acre. In pursuance of said agreement plaintiffs duly signed and acknowledged a warranty deed conveying said land to defendant subject to the mortgages and taxes, and left the same with the First National Bank of Brownstown, Indiana, for delivery upon the payment of the cash consideration according to the terms of the contract on or before March 5, 1913. About March 1, 1913, defendant employed the county surveyor to survey the land and compute the number of acres within the tract purchased, which was done, and it was reported to contain only 104.52 acres. All the parties accepted such report as being true and believed the number of acres to be as calculated by such surveyor, and upon such assumption agreed that the land upon the basis of their original agreement was not reasonably worth $15,000, but was of the approximate value of $11,700, and defendant refused to accept said deed or to consummate the purchase according to the agreement. Thereupon the parties, believing that the tract of land did not contain more than 104.52 acres, were induced to and did agree upon $12,000 as a consideration for the conveyance, and the plaintiffs did, on March 12, 1913, execute to defendant a conveyance of the lands agreeable to the contract except as to the consideration, and defendant being of the same mind as to the acreage accepted the conveyance and paid the purchase price, and, except for their belief that there were but 104.52 acres of land involved in the transfer, the reduction in price and conveyance would not have been made.

Plaintiffs say further that they bought the same tract of land believing it contained substantially 133 acres, and on the —— day of December, 1913, they

first learned that the survey made by the county surveyor was not correct and that the computation of the acreage was erroneous, and that the farm did in fact contain substantially 129 acres, and therefore the reduction in the consideration and the execution of the conveyance was made in ignorance of the facts and under a mistake of facts by all the parties thereto, and under the terms of their agreement and according to the intent of the parties plaintiffs would, except for said mutual mistake, have received the consideration first agreed upon, and in equity and good conscience they are still entitled to receive of defendant the further sum of $3,000 as a fair consideration for the tract so conveyed in excess of 104.52 acres.

Then follows other averments to the effect that before the error was discovered appellant had reconveyed to other innocent purchasers about fifty acres out of the tract, and a rescission was therefore impossible, and as to the residue appellant refused to rescind.

The foregoing facts are sufficiently specific and definite to inform appellant of the theory upon which the complaint was based, and fully informed

1.  him of the claim which he would be required to meet. Furthermore, it clearly appears from the pleading that the facts desired by appellant were as fully known to him as to appellees and the record discloses that appellant was permitted to testify fully concerning the identical matter which he claims should have been more definitely averred in the complaint, so that no possible harm could have come to him if for any reason it would have been proper to have granted his motion. It follows therefore that

there was no reversible error in overruling the motion to require the complaint to be made more specific. *Indiana Bicycle Co.* v. *Willis* (1897), 18 Ind. App. 525, 528, 48 N. E. 646.

At the request of appellant the court stated the facts and conclusions of law thereon which were favorable to appellees. Judgment followed the conclusions of law. The facts found are substantially as follows: Appellees had purchased a tract of land adjoining Brownstown, Indiana, at commissioner's sale. The commissioner's deed conveyed to them 136.37 acres, except two and one-half acres therefrom. On February 5, 1913, appellant obtained a thirty-day option to buy the same tract for $15,000, or he might assume two certain mortgages thereon and pay the difference in cash, approximating $7,900. When this option was obtained appellees and appellant understood and believed in good faith that said tract of land contained approximately 133.87 acres and was at the time valuable and of the reasonable and fair value of $112 to $115 an acre. Prior to March 1, 1913, defendant had made a conditional sale of about fifty acres of the said farm, and in making the measurements therefor he was informed that the quantity of land was less than the number of acres believed to have been contracted for. Defendant then procured the services of the county surveyor, who reported in making the survey that the tract about which the parties were dealing contained 104.52 acres and no more. Defendant then informed plaintiffs of the result of the survey, and he proposed to them that he would buy the tract believed by all the parties to contain 104.52 acres for $12,000. Plaintiffs were induced to accept this proposition. If they had known

the true acreage of the same, they would not have accepted such proposition, and at the time defendant made such last proposition the defendant also in good faith believed that the farm contained 104.52 acres and no more, and made his proposition on that basis. According to the original contract, and before the presumed error was reported, a deed had been executed by plaintiffs to defendant, in which the land was described by metes and bounds substantially as in the deed obtained by plaintiffs from the commissioner, the number of acres contained in the tract being given as 135.48 acres, more or less, less the two and one-half acres referred to before. After the presumed mistake was reported and the sale made on the basis of 104.52 acres, there was added to such original deed what was supposed to be the correct description as found and reported by the county surveyor's survey.

The tenth finding made by the court we set out in full, and it is as follows: "That said tract of land conveyed by plaintiffs to defendant, as aforesaid, for the consideration of $12,000 does in fact contain and did at all the times hereinbefore mentioned contain 130.39 acres and that said sale and conveyance was made in ignorance of that fact, both on the part of plaintiffs and defendant, and that in the making of said sale and conveyance the quantity of land conveyed was material and was of the essence of the contract, and said sale and conveyance for said consideration would not have been made by plaintiffs if they had at the time known the true and correct acreage of said tract, and that at the time of making said sale and conveyance both the plaintiffs and defendant in good faith believed that the tract of land so bargained and conveyed contained only 104.52 acres and no more;

and that said mistake was induced by the survey and
calculation of James F. McCurdy as county surveyor
and that his said survey and calculation were and are
erroneous and incorrect and said mistake was mutual
on the part of the parties to said contract, and that
defendant was willing and except for said mistake of
fact would have bought and taken said lands for a
consideration based upon the true acreage thereof
and calculated at the rate of $15,000 for 132.98 acres,
or $112.70 per acre, and except for said mistake plain-
tiffs would have received $15,000 for said tract of
land instead of $12,000 and in equity should receive
from defendant the further sum of $2,694.95, no part
of which has been paid.'' The remaining facts found
are substantially in accord with the other averments
of the complaint.

Appellant's motion for new trial was overruled.
This ruling and the correctness of each of the conclu-
sions are presented by the errors assigned. The pre-
cise question is whether under the evidence and the
findings of fact plaintiffs are entitled to recover the
value of the excess acreage actually contained in the
farm.

We are not unmindful of the rule, as contended for
by appellant, that there can be no recovery in case of
sale in gross for a lump sum, except upon the
ground of fraud or inequitable conduct. *Tyler*
v. *Anderson* (1886), 106 Ind. 185, 189, 6 N. E.
600; *Wolcott* v. *Moore* (1910), 46 Ind. App. 427, 429,
92 N. E. 880; *Newman* v. *Kay* (1905), 57 W. Va. 98,
49 S. E. 926, 68 L. R. A. 908, 914, 4 Ann. Cas. 39, and
cases cited.

It is equally well settled, we think, that a court of
equity will allow compensation for excess acreage

3. conveyed when there has been a mutual mistake in such conveyance and the transaction has been free from fraud where all the parties have been dealing on the belief that the tract of land conveyed contained a stipulated number of acres. In short, equity will grant relief where there is a mutual mistake.

The same principle has been announced in this state in this language: "In case one purchases real estate at a given price per acre and the purchaser and the seller have a common belief that there is of said real estate a given number of acres, and the purchaser pays the purchase price therefor in full and it is ascertained afterwards that there was a gross shortage in the acreage of said real estate that was in nowise contemplated by the seller and the purchaser, the purchaser may recover at the contract price per acre for the gross shortage in acreage." *Wolcott* v. *Frick* (1907), 40 Ind. App. 236, 81 N. E. 731, and authorities cited.

In the case of *Harrison v. Talbot* (1834), 2 Dana (Ky.) 258, the Court of Appeals, after reviewing many cases, said: "Sales in gross may be subdivided into various subordinate classifications: 1st, Sales strictly and essentially by the tract, without reference, in the negotiation or in the consideration, to any estimated or designated quantity of acres. 2d, Sales of the like kind, in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances, or in such a manner as to show that the parties intended to risk the contingency of quantity, *whatever it might be,* or *how much soever it might exceed, or fall short*

*of, that which was mentioned in the contract.* 3d, Sales in which it is evident, from extraneous circumstances of locality, value, price, time, and the conduct and conversations of the parties, that they did not contemplate, or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency. 4th, Sales which, though technically deemed and denominated sales in gross, are, *in fact,* sales by the acre, and so understood by the parties.''

The court finds in the case that a sale belonging to either the first or second class could only be disturbed for fraud, but in sales of either of the third or the fourth class an unreasonable surplus or deficit may entitle the injured party to equitable relief unless by his conduct he has waived or forfeited his equity.

We are of the opinion that the present case rather falls more clearly within the fourth class.

There is evidence tending to support the finding of facts in all their essentials. It is true there is no direct testimony as to the value per acre fixed by the option agreement, but it is a reasonable inference from all the evidence that the first agreement made the number of acres of the essence of the contract. This construction was placed on the contract by the parties themselves, one by refusing to accept when it was reported that a smaller number of acres was contained in the tract, and the other by acquiescing in such refusal. In any event the price per acre was a mere matter of calculation and required no further proof than was given.

It certainly would seem inequitable to say that plaintiffs could not recover the value of the differ-

ence in the number of acres when by the original option agreement they were to receive $15,000 for 132.98 acres, and would have received the same but for the report of the county surveyor that the tract contained only 104.52 acres, and where both parties, acting in good faith, believed the number of acres reported by such surveyor to be correct, and, acting upon such belief, completed the sale and made the conveyance of the same tract of land for $12,000, and it later developed that the tract actually contained 130.39 acres, resulting in a benefit to appellant of $3,000 on account of the mutual mistake of the parties.

Judge Story, in his work on Equity Jurisprudence (13th ed.), §155, says: "A court of equity would be of little value if it could suppress any positive fraud and leave mutual mistakes innocently made to work intolerable mischiefs, contrary to the intention of the parties. It would be to allow an act originating in innocence to operate ultimately as a fraud by enabling the party who receives the benefit of a mistake to resist the claims of justice under the shelter of a rule framed to promote it."

We are satisfied that the estimated number of acres involved in this case was in fact the controlling feature of the agreement between the parties, and that the price fixed, although in gross, was based upon the supposed area and was determined by it, and was in fact a sale by the acre, and was so understood and acted upon by the parties.

Equity will therefore interfere to grant relief measured by the excess acres and the value thereof as expressed by the parties in their contract when the contract, as in this case, cannot be rescinded because of

the gross error which has been innocently made by both parties.

Judgment affirmed.

NOTE.—Reported in 116 N. E. 327.